

FILED
MAR -7 2012
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**JOHNNY TAYLOR,**
    **Plaintiff,**

v.            CASE #:  2:12cv124
                  **JURY TRIAL DEMANDED**

**WEXFORD HEALTH SOURCES, INC.**
    Serve:
    Corporation Service Company
    Bank of America Center, 16th Floor
    1111 East Main Street
    Richmond, Virginia 23219

    **Defendant.**

## COMPLAINT

Plaintiff, Johnny Taylor, by and through his attorneys, files this Complaint for damages alleging that the Defendant, Wexford Health Sources, Incorporated, by and through various employees and physicians employed by Wexford, committed medical malpractice resulting in permanent and traumatic lifetime damage and injury to Plaintiff's person, and in support thereof states as follows:

### PARTIES

1. Plaintiff, Johnny Taylor, (hereinafter "Johnny") is a resident of the State of Oklahoma.

2. At all relevant times herein, Johnny Taylor was incarcerated in the Chesapeake City Jail in November and December, 2007 and was then a citizen of the Commonwealth of Virginia.

3. Defendant, Wexford Health Sources, Inc. ( hereinafter "Wexford"), is a business incorporated in the State of Florida, with is principal place of business in the State of Pennsylvania and conducting business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this medical malpractice case pursuant to 28 U.S.C. §1332(a) as the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

5. In addition, this Court has supplemental jurisdiction over the medical malpractice case under 28 U.S.C. §1367(a).

6. Venue is proper in this Court as the City of Chesapeake, where all events took place, lies in the Norfolk Division.

## FACTS

7. The City of Chesapeake Sheriff's Department entered into an agreement with Wexford titled "Inmate Healthcare Services for Chesapeake City Jail" commencing on July 1, 2005.

8. This Agreement, at all times relevant herein, was in effect and covered the provision of health services for inmates such as Johnny Taylor.

9. Wexford was required, under the provisions of the Agreement, to diagnose and treat all illnesses and injuries, and administer all prescription medication as ordered for the inmates at the Chesapeake City Jail.

10. Johnny was incarcerated in the Chesapeake City Jail in November and December, 2007.

11. On November 7, 2007, Johnny was released from Chesapeake General Hospital with discharge instructions for high blood pressure medication to be given to Johnny and for follow-up tests for his hypertension.

12. Johnny was released on that date directly to the Chesapeake City Jail with the discharge instructions and medication for hypertension, instructions for blood pressure monitoring, and blood pressure testing.

13. Wexford employees had actual knowledge of the prescription and of the instructions for follow-up care.

14. Pursuant to the aforementioned Agreement, Wexford nurses and other employees had a duty to monitor Johnny's blood pressure in accordance with the treating physician's instructions.

15. Nurses employed by Wexford, while acting in the course and scope of their employment, and for Wexford's benefit under the terms of the aforementioned Agreement, noted Johnny's blood pressure medications were to be given beginning November 7, 2007.

16. Despite this knowledge, Wexford intentionally refused to give Johnny any of his prescribed blood pressure medications at all during the month of November.

17. Despite this knowledge, Wexford intentionally refused to monitor Johnny's blood pressure at all during the month of November, 2007.

18. According to Wexford's nursing notes, Wexford did not administer any of Johnny's blood pressure medication until December 1, 2007.

19. On several occasions during November and December, Plaintiff complained to the Jail's correctional and Wexford staff of extreme pain, of feeling ill and needing his medication.

20. Despite Johnny's complaints, Wexford employees intentionally and recklessly refused to examine him, monitor his blood pressure, or give Johnny his blood pressure medications at all during November, 2007.

21. On several occasions, Johnny requested to see medical staff for his continued complaints of feeling ill and having intense pain.

22. It was not until December 22, 2007 when Johnny was unable to get out of his bed and continued to complain of excruciating pain that the Sheriff's deputies transported him to Chesapeake General Hospital.

23. This transportation occurred several hours after Johnny began complaining of chest pain and during which no medical attention was given for his complaints.

24. When Johnny arrived at Chesapeake General Emergency, his blood pressure was elevated to a dangerous degree.

25. Chesapeake General Emergency diagnosed Johnny as suffering from an aortic dissection.

26. Johnny was thereafter transferred to Norfolk Sentara Hospital for surgery to repair the aortic dissection.

27. Johnny, throughout the months of November and December, continuously complained of chest pain, discomfort, and not feeling well to the Sheriff's Department staff and to Wexford Employees.

28. Despite Johnny's complaints to the Sheriff's Department and Wexford employees, Wexford employees refused to follow up on his medical complaints and failed to refer the Plaintiff to a physician for proper care.

29. Despite Johnny's complaints, Wexford refused to investigate to determine their etiology.

30. During the time in which Wexford was providing medical services for the jail, there were several complaints made to jail staff about the inadequacy of the medical care provided by Wexford.

31. During the time period in which Wexford was providing medical services for the jail, there were several inmate deaths resulting from inadequate medical care.

32. Since the medical care provided to Johnny was revealed, the City of Chesapeake and the Sheriff's Department terminated the contract with Wexford for medical services and hired a different medical provider.

33. At all times relevant to this action, Wexford's physicians and nurses were acting within the scope and course of their employment and under color and badge of authority as jail providers in providing medical services for the Chesapeake City Jail in 2007 and were acting for Wexford's pecuniary benefit.

34. The Wexford nurses and physicians, at all times relevant herein, were acting as the agent and/or employee of Defendant, Wexford, and owed a duty to exercise ordinary care and to comply with the standard of care set forth in section 8.01-581.20 of the Code of Virginia.

35. Defendant Wexford is vicariously liable for the intentional and reckless behavior referenced in this Complaint of physicians and the nurses providing care to the Plaintiff.

36. At all times relevant herein, the nurses and employees who cared for the Plaintiff were acting within the scope and course of their employment with Wexford and owed a duty to exercise ordinary care to the Plaintiff.

37. A lawsuit alleging medical malpractice was previously commenced in the Chesapeake, Virginia Circuit Court against Wexford by Johnny on December 21, 2009 and was nonsuited on September 19, 2011.

## COUNT I:
## RESPONDEAT SUPERIOR LIABILITY OF WEXFORD FOR MEDICAL MALPRACTICE BY ITS EMPLOYEES

38. The plaintiff incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

39. At all times relevant to this action, all physicians and staff employed by Wexford and caring for Johnny were "health care providers" as that term is used in §8.01-581.1 of the Code of Virginia.

40. At all times relevant to this action, all physicians and staff employed by Wexford were providing "health care" to Johnny as that term is used in §8.01-581.1 of the Code of Virginia.

41. At all times relevant to this action, the physicians and staff of Wexford owed a duty of ordinary care to Johnny to ensure all proper medical procedures were completed such a fashion that they met the standard of care.

42. In treating Johnny at the Chesapeake City Jail, the physicians and staff employed by Wexford had a duty to exercise ordinary care, treat him in accordance with recognized and acceptable standards of medical care and treatment, and to comply with the standard of care as set forth in the Code of Virginia §8.01-581.20.

43. Notwithstanding said duties, the physicians and other staff employed by Wexford breached this standard of care by recklessly failing to give Johnny his blood pressure medication after returning to the jail on November 7, 2007, by not monitoring Johnny's blood pressure, by

recklessly ignoring Johnny's complaints of intense pain, and by recklessly failing to do the additional tests which were ordered pursuant to the discharge instructions.

44. As a direct and proximate result of the aforementioned breach of the standard of care owed to Johnny by Wexford's employees, Johnny suffered an aortic dissection, had to undergo major cardiac surgery, suffered a substantial loss of lower extremity movement, has had to undergo months of hospitalization in intensive care and rehabilitation in an effort to regain his strength, has suffered permanent injury and will continue to suffer injury and need future medical care, has suffered and will continue to suffer physically, mentally, and financially, and will continue to suffer in the future the effects of said damage. The above instances of medical negligence hav also severely impacted Johnny's ability to function on a daily basis with constant pain and loss of strength.

45. As a direct and proximate cause of the negligence of Wexford's employees, Johnny also suffered mental anguish in the past and will continue to suffer such in the future, medical expenses in the past and future, and emotional injuries, anguish, pain and suffering

46. At all relevant times, the physicians and staff of Wexford were acting within the scope of the duties of employment, agency, or contract and in the execution of the service for which they were engaged.

47. At all times relevant herein, the physicians and staff of Wexford were acting within the ordinary course of the business of Wexford.

48. Wexford is responsible, jointly and severally, for all damages incurred by Plaintiff.

WHEREFORE, the plaintiff demands damages in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($3,500,000.00) and his costs in his behalf expended.

A JURY TRIAL IS DEMANDED IN THIS MATTER

JOHNNY TAYLOR

_____
By Counsel

David P. Morgan, Esquire (70211)
Mary A. Napier, Esquire (80741)
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile
mnapier@cravensnoll.com
dmorgan@cravensnoll.com